24-cv-2455 JMB/LIB



Sonya Braxton, and those similarly situated, Plaintiff

v.

State of Minnesota, Minnesota Department of Health, Minnesota Department of Human Services, Defendants

Case No.

Warren E. Burger Federal Building and U.S. Courthouse
316 North Robert Street - Suite 100
St. Paul, MN 55101

## COMPLAINT

Plaintiff, Sonya Braxton, brings this action against the State of Minnesota, Minnesota Department of Health, and Minnesota Department of Human Services (collectively referred to as "Defendants") for violations of federal Medicaid statutes and regulations, negligence, breach of contract, state created danger doctrine, disparate impact, civil rights violations, misrepresentation, and violations of state health care laws. Plaintiff seeks relief for the harm suffered due to the Defendants' failure to ensure adequate dental access for Medicaid recipients, particularly in rural areas of Minnesota. Emergency Injunction Requested.

## PARTIES

Plaintiff, Sonya Braxton, is a Disabled, SSI, Medicaid recipient residing in Littlefork, Minnesota.

Defendants, the State of Minnesota, Minnesota Department of Health, and Minnesota Department of Human Services are responsible for administering the Medicaid program within the state and ensuring access to necessary healthcare services for Medicaid beneficiaries.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1331 (federal question jurisdiction) and 28 U.S. Code § 1343 (civil rights and elective franchise), as this action arises under federal law and involves claims concerning the deprivation of rights under color of state law; 42 U.S.C. § 1983.

Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Additionally, venue is proper in this district because Defendants conduct business and maintain offices within this district.

1



**FACTUAL ALLEGATIONS**

**As a Medicaid recipient residing in Littlefork, Minnesota, I have been unfairly denied adequate dental access despite the statutory and regulatory obligations imposed on Defendants. Despite my diligent efforts to resolve this matter outside of court, I regretfully found no alternative but to file this lawsuit based on the undeniable facts of the case. The immense stress and burden of having to take legal action weigh heavily on me, but I am compelled to do so due to the dire circumstances outlined in my complaint.**

**"Low-income Minnesotans enrolled in Medical Assistance and MinnesotaCare experience higher rates of dental disease and greater difficulty accessing dental services than Minnesotans with private dental insurance."** - FROM MN DHS PAGE

https://mn.gov/dhs/medicaid-matters/oral-health/



## ORAL HEALTH

Low-income Minnesotans enrolled in Medical Assistance and MinnesotaCare experience higher rates of dental disease and greater difficulty accessing dental services than Minnesotans with private dental insurance. The Legislature took major steps in 2023 and 2023 to bridge this oral/a divide, passing historic dental legislation.

Key changes aim to encourage more dental providers to sign up to serve public health care program enrollees and help those already signed up serve more Medical Assistance and MinnesotaCare patients. DHS has made it easier to sign up to serve public health care program enrollees through its ...                    and

The key dental package legislative changes include:

This dashboard displays dental participation rates by county (which can be filtered by adult and child), by health plan, and by race and ethnicity.

**Defendants have negligently failed to provide Plaintiff and other Medicaid recipients with necessary dental care, resulting in extreme pain, infection, swelling, and partial tooth loss for Plaintiff. These conditions have significantly impacted Plaintiff's daily life and caused emotional distress, duress, and exacerbation of plaintiff's disabilities of PTSD and anxiety.**

(K08.89) Pain, dental  (primary encounter diagnosis)
Comment: consider infection since her cracked tooth was not hurting until recently
Plan: start Clindamycin as she says Amoxicillin does not work for her. Advised her to see
a dentist ASAP. She will likely have to go out of town for this. I gave her a business card
for Miller Dental in Duluth.

MyChart licensed from Epic Systems Corporation ℗ 1999 - 2024

**FROM MYCHART- MY E.R. VISIT NOTES ABOUT ABSCESSED TOOTH AND I WOULD HAVE TO GO
DULUTH MN DENTIST (PIC 1)**



**DENTIST BUSINESS CARD FOR DENTIST IN DULUTH MN GIVEN TO PLAINTIFF 9/28/2022 BY E.R.
DOCTOR (PIC 2)**

3

**TOOTH LOSS THEN OCCURRED ON MAY 21, 2023 AFTER NOT BEING ABLE TO ACCESS DENTAL CARE FOR SO LONG**



TOOTH FROM THE PARTIAL TOOTH I LOSS DUE TO LACK OF DENTAL ACCESS (PIC 3)





TOOTH FROM THE PARTIAL TOOTH I LOSS DUE TO LACK OF DENTAL ACCESS (PIC 4)



ABCESSED TOOTH WHERE PARTIAL TOOTH LOSS OCCURRED DUE TO LACK OF DENTAL ACCESS
ALSO PROOF THIS IS MY MOUTH I HAVE BLUE SPOT ON MY GUM HAD IT SINCE I CAN
REMEMBER (PIC 5)



CLOSE UP OF ABCESSED TOOTH WHERE PARTIAL TOOTH LOSS OCCURRED DUE TO LACK OF
DENTAL ACCESS (PIC 6)



Dental Lifeline Network
1800 15th Street, Suite 100
Denver, CO 80202

FIRST-CLASS

US POSTAGE PITNEY BOWES

$ 000.53°

Sonya Braxton
945 2nd Ave. PO Box 204
Littlefork, MN 56653

Dental Lifeline Network
1800 15th Street, Suite 100
Denver, CO 80202

FIRST-CLASS

US POSTAGE

$ 000.

Sonya Braxton
945 2nd Ave. PO Box 204
Littlefork, MN 56653

PROOF OF CONTINUED MN DENTAL CRISIS, PLAINTIFF IS ON A WAITING LIST WITH *DENTAL LIFELINE NETWORK. A DENTAL CARE WAITING LIST WITH VERY HIGH DEMAND IN MINNESOTA WAITS THAT CAN TAKE MONTHS TO MORE THAN A YEAR TO BE SEEN BY A VOLUNTEER DENTIST, MINNESOTA'S DENTAL CRISIS IS CAUSED BY THE 2009 STATE BUDGET CUTS. CUTS THAT HAVE TAKEN AWAY PLAINTIFF ACCESS TO DENTAL CARE WITH MEDICAID. (FRONT AND BACK OF POST CARDS SENT TO ME FROM DENTAL LIFELINE NETWORK (PIC 7a)

Dear Applicant,

We have received your Dental Lifeline Network application for dental care and have placed your application on our waitlist.

Due to our limited number of volunteer dentists and the high number of applications we receive, waitlists can be a few months to more than a year in some areas. Please understand we cannot return phone calls about where you are on the waitlist due to the high volume of calls we receive. We are trying to help people through the program as quickly as possible and will call you when your name is on top of the waitlist.

To complete your application, we ask that you send the following supporting documents to the program coordinator if you have not already done so.

- SSI/SSDI letter of verification
- DD214 if you are a veteran
- Dental Benefits breakdown if you receive dental insurance

**Dental Lifeline**
NETWORK.

To find out more information about our program or find the address/phone number of the coordinator in your state, please visit www.DentalLifeline.org/our-state-programs

Sincerely,
Dental Lifeline Network

Dear Applicant,

We have received your Dental Lifeline Network application for dental care and have placed your application on our waitlist.

Due to our limited number of volunteer dentists and the high number of applications we receive, waitlists can be a few months to more than a year in some areas. Please understand we cannot return phone calls about where you are on the waitlist due to the high volume of calls we receive. We are trying to help people through the program as quickly as possible and will call you when your name is on top of the waitlist.

To complete your application, we ask that you send the following supporting documents to the program coordinator if you have not already done so:

- SSI/SSDI letter of verification
- DD214 if you are a veteran
- Dental Benefits breakdown if you receive dental insurance

**Dental Lifeline**
NETWORK.

To find out more information about our program or find the address/phone number of the coordinator in your state, please visit DentalLifeline.org/our-state-programs

Sincerely,
Dental Lifeline Network

**PROOF OF CONTINUED MN DENTAL CRISIS, PLAINTIFF IS ON A WAITING LIST WITH \*DENTAL LIFELINE NETWORK. A DENTAL CARE WAITING LIST WITH VERY HIGH DEMAND IN MINNESOTA WAITS THAT CAN TAKE MONTHS TO MORE THAN A YEAR TO BE SEEN BY A VOLUNTEER DENTIST, MINNESOTA'S DENTAL CRISIS IS CAUSED BY THE 2009 STATE BUDGET CUTS. CUTS THAT HAVE TAKEN AWAY PLAINTIFF ACCESS TO DENTAL CARE WITH MEDICAID. (FRONT AND BACK OF POST CARDS SENT TO ME FROM DENTAL LIFELINE NETWORK (PIC 7b)**

Plaintiff's ongoing dental access issues have persisted since plaintiff moved to Minnesota in 2022, exacerbating plaintiff's suffering and disabilities. The lack of dental access is directly linked to the State's budget cuts of health sevices monies in 2009, which limited access to essential dental care for Medicaid recipients.

Plaintiff has actively engaged with the State of Minnesota's Dental Services Advisory Committee and directly requested the establishment of a public dental clinic in plaintiff's county to address the dire dental issues faced by Medicaid recipients. (see EXCERPTS from meeting report in

embedded images)

 **DEPARTMENT OF HUMAN SERVICES**

**Dental Services Advisory Committee**

Meeting Date:      October 30 , 2023 | 1- 3 pm Webex
                   ELA 2130 to comply with Open Meeting Law (Carol LaBine only)

Minutes: Maytan | Seieroe | Vrklan

Approved at the January 29, 2024 DSAC meeting

**Voting Members**

| Name | Organization | Present |
|---|---|---|
| Leah Anderson | PrimeWest | x |
| Elizabeth Branca ADT RDH | Metro State University | x |
| Colleen Brickle EdD RDH RF | Normandale Community College | x |
| Trina Courtright LDA, RDH, ADT | Children's Dental Services | x |
| Nicole Ferrian RDH | Apple Tree Dental | x |
| Michele Grose RDH | South Country Health Alliance | x |
| Mike Helgeson DDS | Apple Tree Dental | x |
| Boyen Huang PhD, MHA, DDS | U of MN School of Dentistry | x |
| Daniel Johnson DDS | Southern Heights Dental Group | x |
| David Maki DDS MBA | Dental Associates of MN | x |
| Shivan Nelson DDS | Community Dental Care | x |
| Jim Nickman DDS MS | Metropolitan Pediatric Dental Associates | x |
| Mary Seieroe DDS **CHAIR** | Hennepin Health Care | x |
| Todd Theirer DDS MPH | Health Partners | X |
| Jayne Whiteford MSW | Consumer | x |

**Ex – Officio Members by virtue of position held**

| Name | Organization | Present |
|---|---|---|
| Brian Kajeswki DDS | DHS | DCT Dental Director | |
| Prasida Khanal MPH BDS | MDH | State Oral Health Director | |

**Attendance of DHS staff**

| Name | | Present |
|---|---|---|
| Carol LaBine | Benefits Policy Manager | x |
| Linda Maytan | Dental Policy Director | |
| Abhiram Rajagopal | Support | Benefits Policy | x |
| Tracy Vrklan | Benefits Policy | x |
| Angela Yamoah | Dental Benefits Policy Lead | x |

1

**Attendance of MDH staff**

| Name | Business Unit | Present |
|---|---|---|
| Karl Fernstrom | All Payer Claims Database \| Health Economics Program | x |
| Koua Her | Oral Health Program | X |
| Ndekala Sakala | Oral Health Program | x |

**Attendance of the Public:**

| Name | Organization | Present | |
|---|---|---|---|
| Jeanne Anderson | MN DHA | x | Meeting: |
| Dick Diercks | Park Dental Government Affairs | x | |
| Lauren Gerlach | Health Partners | x | Call to |
| Janet Howard | MDH consultant | x | Order |
| Deb Jacobi | Apple Tree Dental | x | and |
| Karen Kleinhans | Exec. Director – Community Dental Care | x | Approval |
| Clare Larkin | Normandale Community College | x | of |
| Sheila Riggs | U of MN School of Dentistry \| immediate past chair | x | January |
| Nenick Vu | MNACHC | x | meeting |
| Greg Wise | Wright County Health Promotion Coordinator | x | minutes |
| Sarah Wovcha | Children's Dental Services | x | |
| Lori Zook | Community Dental Care | x | Call to approve |

April 3, 2023 meeting minutes. No discussion. Motion to approve and second. Meeting minutes approved.

**DSAC administration and appointments**

Welcome to Dr. Theirer, in the new DSAC voting position of Post Graduate Dental Education Program Director (Health Partners AEGD).

**Dental hero** Appletree dental recipient of the DHS Commissioner Circle of Excellence Award. Congratulations!

**Metro State Dental Therapy Program Update**

Elizabeth Branca informed DSAC that the Dental Therapy Program is suspended for the time being due to multiple factors.   The program will change to a six-semester model.

DSAC members and friends suggest each write a letter of support to Metro State University leadership / Provosts Office about the value and importance of this program to Minnesota.  The group also discussed the formation of an ad-hoc group to assist with accreditation and program design.

**MDH Updates**

1. **All Payer Claims Database (APCD) update**

2

General concerns and questions about the updated benefit set were discussed; the provider network adequacy continues to be challenging.

**Proposed work plan for DSAC in 2024**

DSAC will review the current Dental Benefit and make recommendations for changes to it using industry standards and standard of care / standard practice. Minnesota Rule 9505.0175 contains the definition of medical necessity which will be used in this process.

Minnesota Rule 9505.0175 will be used as the basis for determining coverage in 2024.

Subp. 25. Medically necessary or medical necessity. "Medically necessary" or "medical necessity" means a health service that is consistent with the recipient's diagnosis or condition and:

   A. is recognized as the prevailing standard or current practice by the provider's peer group; and

   B. is rendered in response to a life-threatening condition or pain; or to treat an injury, illness, or infection; or to treat a condition that could result in physical or mental disability; or to care for the mother and child through the maternity period; or to achieve a level of physical or mental function consistent with prevailing community standards for diagnosis or condition; or

   §C. is a preventive health service under part 9505.0355.

**Public Comment and public reading of letter**

An email was sent to DHS from a Medicaid recipient, Sonya Braxton, requesting that her letter be read publicly. Carol LaBine read the letter aloud at the meeting. It is attached to these minutes.

The letter was discussed.

**Adjourn**

**Next Meeting:**

Hybrid - January 29ᵗʰ 1 – 3 pm on WebEx and in-person at ELA

6



**DEPARTMENT OF HUMAN SERVICES**

October 30, 2023

Reading of Letter of Testimony from Sonya Braxton to Dental Services Advisory Committee, Public testimony

Read by: Carol LaBine – Benefits Policy Manager | Health Improvement and Benefit Design | DHS

---

Consent form DHS-6202-ENG Public Testimony Disclosure Form signed by this MHCP member, dated, and on file with DSAC; sent to the DSAC email box on 10-23-23 at 5:57 pm.

---

To Dental Home Advisory Committee:

**Reasonable Accommodation Request for Oct. 30th, 2023, Meeting to Submit Testimony EMAIL Letter Instead of In Person Testimony Web or Phone Call in Testimony**

**I would like to submit this letter as testimony for the upcoming meeting, I am requesting a**
**reasonable accommodation to do so by letter** and have the letter read out loud by someone who has authority to do so at the meeting, and for it to be added to the public transcript of the meeting on 10/30/2023 so it is available with any open records request from the public.

**I have also attached the completed and signed Public Testimony Disclosure Form dated today 10/23/2023 to this email.**

---

**Sonya Braxton Resident of Littlefork MN Testimony Letter to Dental Home Advisory Committee, Dated 10/23/2023**

I and my daughter are Indigenous females from North Carolina who have been living in Northern Minnesota Littlefork Koochiching County since March 2022 without any dental care due to not one local dentist in this region who was willing to see us. I also don't own a car and the state's Medicaid transportation is not always available on appt days nor can these drivers go too far out the way for appts, and even with that no dentist in other areas within a local radius will see me so either way we have no access to dental care.

The closest dentist is in Duluth, I cannot go that far away from home. It would be highly stressful and aggravate my disabilities of anxiety and PTSD, it also is not a reasonable thing to force anyone to travel that far for dental care. We live only 20 or so miles from International Falls MN and there are no dentists here that will take us as new patients because we have Medicaid and I can fairly state also its because we are brown minorities who receive Medicaid.

I receive Medicaid for my household due to being a recipient of SSA/SSI. We moved to Northern MN in 2022 due to a housing emergency in NC at the time and this was the only region I could find a home to purchase quickly through a low-

7

income USDA loan, our intent at the time was to move to Northern California but the USDA office in that region interfered with the application process. In doing that they left us with little time to find a home that we could afford, so we moved to MN. We moved here to get away from the uptick in crime in the south and the white racism prevalent in the south. I wanted to buy a home in a rural area away from the east and south coast that we could afford.

Since being here in Northern Minnesota I found that I can't get dental care for either of us and I have been suffering with a dental abscess that has evolved into a partial loss of that same tooth with a cracked tooth. This is due to Minnesota's lack of dental care in this rural area.

The only thing close to dental care that I have gotten since moving to Northern MN was Children's Dental Service coming to this region and then only offering an Xray, so I got an Xray in International Falls MN when Children Dental Services came here this year, but no actual dental treatment. I still have the abscess and cannot eat food properly because I can only chew on one side of my mouth and have a cavity on the side of my mouth, I use to chew food with, so that is also painful at times. Chewing on one side also makes that side of my jaw sore and aggravated as well from overuse.

I feel like I am living in the JIM CROW era where if you belong to a certain group, you have privileged treatment but if you are a minority, you get second class treatment from the local non-minority people in the community. Even the non-minority ER doctors that saw me for my tooth were dismissive and would not try to drain the abscess.

This area needs a public dental clinic for low-income minority people like me and my daughter. Health care is a human right. The dentists in this region did not uphold their oath to treat people who need treatment in an emergency.

The state of Minnesota has a duty to supply a public dental clinic for low-income minorities and employ dentists who will honor their oath to treat and serve everyone. When someone chooses to have a career that services the public they can't pick and choose based on color and income status who they treat if they claim to accept Medicaid.

Letting someone physically and emotionally suffer the pain of a health issue is barbaric and that is what Minnesota is actively doing by not putting a public dental clinic in this region for people like me who need it.

Oppressing poor minorities in health services is what Minnesota's government is guilty of by not actively and immediately bringing public dental services to this region.

I went so far as to report this to the Dept of Justice Civil Right Division so that it is on record with the Federal government because the State of Minnesota accepts Medicaid funding from the Federal government and should use that funding properly to service those on Medicaid.

Minorities like us should not be without dental care since we have Medicaid, minorities should have access to dental care just like others in this rural community.  The state accepts federal dollars but omits the fact that it is not being used to provide dental services for the most vulnerable populations in the state (minority populations) when it comes to dental services Medicaid pays for. WE NEED A PUBLIC DENTAL CLINIC THAT SERVES THE WHOLE COMMUNITY WITH GOOD DENTAL CARE.

Thank you,

Sonya Braxton

Littlefork, MN

8

Galatians 6:7
Do not be deceived: God is not mocked, for whatever one sows, that will he also reap.

Proverbs 14:31
He who oppresses the poor shows contempt for their Maker, but whoever is kind to the needy honors God.

2 Corinthians 4:6
For God, who commanded the light to shine out of darkness, hath shined in our hearts, to give the light of the knowledge of the glory of God in the face of Jesus Christ.

---

9

Despite Plaintiff's efforts, Defendants have displayed egregious, blatant, deliberate indifference, and disregard for Plaintiff's dental health, ignoring plaintiff's pleas for assistance and failing to

address the systemic barriers preventing Medicaid recipients from accessing necessary dental care.

I, the Plaintiff, am an Indigenous female who relies on low-income disability income (SSI) from the SSA. I face additional challenges due to my minority status and limited access to transportation, which exacerbate difficulties in accessing dental care. Medicaid transportation is not guaranteed for emergencies, and there have been instances when no driver was available to take me to the ER on the day I urgently needed care for dental pain and infection. Consequently, I had to reschedule for a time when transportation was available.

### MENTAL HEALTH COUNSELING DUE TO MY DENTAL CRISIS

I am currently undergoing mental health counseling to manage the exacerbation of my PTSD and anxiety, which resulted from the dental crisis. I had been under medication for these conditions before and during the dental crisis, but the severity of the crisis necessitated additional therapeutic support.

### ARGUMENTS

**State Created Danger Doctrine:** I am experiencing firsthand the devastating consequences of state budget cuts to dental care. Since moving to Minnesota in 2022, these cuts have directly prevented me from accessing necessary dental services, leading to severe dental abscesses and infections that cause excruciating pain and significantly impact my daily life. These infections make it difficult to eat, sleep, and concentrate, exacerbating my pre-existing PTSD and anxiety. It is incredibly distressing because timely dental care could prevent these issues, but the budget cuts leave me without options.

Under the state-created danger doctrine, my ongoing situation presents strong legal arguments. Firstly, the state's decision to slash Medicaid-funded dental services directly causes or significantly contributes to the harm I am enduring. The increased risk of harm is evident as the budget cuts directly limit access to essential dental treatments, foreseeably leading to severe health complications like the ones I am experiencing.

Secondly, Medicaid recipients like myself have a special relationship with the state, relying on Medicaid for essential healthcare needs. By reducing funding and restricting access to dental care, the state fails in its duty to protect our health and well-being. This failure is particularly egregious given the foreseeable consequences: serious dental infections and worsened mental health conditions.

From a constitutional perspective, the state's actions may also violate the Due Process Clause of the Fourteenth Amendment, which safeguards against arbitrary governmental actions that jeopardize individual safety and well-being.

My personal testimony underscores these arguments. The prolonged suffering from dental infections and the exacerbation of my mental health conditions since 2022 are direct consequences of the state's decisions. This ongoing experience highlights the critical need for accessible healthcare services for vulnerable populations like Medicaid recipients.

The state-created danger doctrine provides a legal framework to hold the state accountable for actions that create or enhance dangers to individuals. In my ongoing dental crisis, the state's budget cuts to dental care directly increase risks, causing significant harm that could be prevented with adequate healthcare provision. This ongoing situation underscores the importance of ensuring that governmental actions uphold the health and safety of all individuals, especially those in vulnerable circumstances and marginalized persons.

> a. Direct Causation: The state's decision to slash Medicaid-funded dental services directly caused or significantly contributed to the harm I am enduring. This establishes a clear link between the state's actions and the severe dental abscesses, infections, tooth loss, and pain I am forced to endure.
>
> b. Foreseeability: It was evident that the budget cuts would increase the risk of harm, leading to severe health complications like the ones I am experiencing. This supports my argument that the state was aware or should have been aware of the potential consequences of its actions.
>
> c. Constitutional Violations: I believe the state's actions may violate the Due Process Clause of the Fourteenth Amendment, which protects against arbitrary governmental actions jeopardizing individual safety and well-being. This perspective strengthens my argument that the state's decisions were intentional or deliberate in their disregard for my health and safety, and the health and safety of others similarly situated.
>
> d. Special Relationship: As a Medicaid recipient, I rely on Medicaid for essential healthcare needs. By reducing funding and restricting access to dental care, the state has failed in its duty to protect my health and well-being, and others similarly situated. This failure underscores the intentional or deliberate nature of the state's actions, especially considering the foreseeable consequences: serious dental infections, tooth loss, and exacerbated mental health conditions.

**Disparate Impact:** In the context of disparate impact, Medicaid affects me directly as a low-income adult reliant on it for healthcare. Due to state budget cuts, access to dental care through Medicaid has been severely limited. This situation disproportionately harms individuals like me who depend on Medicaid for essential dental services.

The lack of access to dental care has significant health consequences. Without adequate dental services, issues like untreated dental problems and infections can worsen, affecting my overall

17

health and well-being more than those who can afford private dental care. Infections from dental issues can also be life-threatening for some, potentially leading to conditions like sepsis.

In terms of legal considerations, disparate impact in this context does not typically involve disability discrimination laws such as the ADA or Section 504 of the Rehabilitation Act. Instead, it focuses on the unequal impact of state policies or budget decisions on low-income adults who rely on Medicaid.

This disparity underscores the need for equitable access to healthcare services for low-income adults like myself who rely on Medicaid. Ensuring fair and adequate healthcare access is crucial to promoting health equity and addressing the unique challenges faced by vulnerable populations in our healthcare system.

**Unreasonableness of Defendants' Actions:** The defendants' unreasonable actions regarding low-income adult Medicaid recipients' lack of access to dental care directly caused the injuries suffered by the plaintiff. The state has a duty of care to ensure that the plaintiff has reasonable access to dental care, which the defendants breached. These actions have caused significant harm to the plaintiff and resulted in substantial losses.

**Legal Standards:** Defendants, the State of Minnesota, Minnesota Department of Health, and Minnesota Department of Human Services, are responsible for administering the Medicaid program. Under federal law, they are obligated to ensure that Medicaid recipients have access to necessary healthcare services, including dental care.

**Budgetary Constraints:** The defendants may argue that budgetary constraints, including the 2009 budget cuts, necessitated reductions in healthcare expenditures, including dental services. They can assert that difficult decisions had to be made to balance competing priorities within limited state resources. However, the causation and liability of the defendants' actions are clear due to their decision to cut the state budget, prioritizing financial considerations over the health of its citizens.

**Impact on Recipients:** Plaintiff states that these budget cuts have disproportionately harmed low-income adult Medicaid recipients, including plaintiff, particularly medicaid recipient in rural areas where access to dental care is already limited. The evidence, such as plaintiffs ER visit notes, Dental Service Advisory Committee testimony, and evidential photographs, illustrates the significant and sometimes severe consequences faced by individuals due to lack of access to timely dental treatment.

**Federal Requirements:** Despite budgetary challenges, defendants are obligated under federal Medicaid statutes and regulations to ensure that services are provided to eligible individuals without undue delay. Plaintiff's argument suggests the defendants failed to meet these obligations, resulting in ongoing harm, and exacerbation of plaintiff existing health conditions.

18

**The State's Decision To Cut Funding To Health Services In 2009 Was Not Only A Violation Of Its Duties Under The Medicaid Program, But It Was Also A Reckless Disregard For The Well-being Of Its Citizens:** Despite the fact that the federal government provides significant funding to the state for Medicaid, which includes dental services, the state chose to prioritize other areas of its budget over the health and well-being of its citizens.

The federal government provides a significant amount of funding to the state for Medicaid, which is designed to provide health coverage to low-income individuals, including children and pregnant women. This funding is provided through a combination of federal and state dollars, with the federal government providing a significant proportion of the funding. In fact, according to data from the Centers for Medicare and Medicaid Services, the federal government provides (approximately 58%) of Medicaid funding, while the state provides (approximately 41%) with (approximately 29%) of the state budget being Medicaid.

Despite this significant funding, the state has chosen to prioritize other areas of its budget over the health and well-being of its citizens. This is particularly egregious when it comes to dental services, which are critical for maintaining good oral health and preventing serious health problems that can be life-threatening like for instance a potential sepsis infection from tooth abscess. The state's decision to cut funding to dental services has resulted in a dental crisis that has left many low-income individuals without access to necessary care.

The state's actions in this case are not only a violation of its duties under the Medicaid program, but they also demonstrate a reckless disregard for the well-being of its citizens, particularly its marginalized citizens. The state's decision to prioritize other areas of its budget over the health and well-being of its citizens is not only unjustified, but it is also illegal. I urge this court to hold the state accountable for its actions and to award punitive damages as a way to punish the state for its reckless behavior and to deter it from engaging in similar behavior in the future. Behavior that has significantly harmed the plaintiff, as this is an ongoing dental crisis affecting the plaintiff's dental health and is continuing to cause emotional distress and duress to the plaintiff.

As a result of this crisis, I the plaintiff am forced to live in a state of constant anxiety and fear. I am  constantly worried about the health of my teeth, and the potential consequences of not receiving necessary care. I the plaintiff am forced to live with the constant fear of pain, swelling, tooth decay, infection, and even tooth loss, at times causing panic attacks so severe that plaintiff body has panic attack temors that feel like full body buzzing its a very stressful thing to feel. Plaintiff also has heart palpitations at times as well from the worry. Plaintiff also has nightmares about plaintiff's teeth dire condition, tooth pain and the fear of tooth loss haunts plaintiff's dreams as well.

As the plaintiff's my situation is not just a matter of physical discomfort or pain, but it is also a matter of emotional distress and duress. I the plaintiff am forced to live with the constant stress

of not knowing when I will be able to access the care needed. I am forced to live with the constant fear of not being able to afford the care needed.

This is not just a matter of theoretical harm, but it is a real and tangible harm that I as the plaintiff experience every day. My testimony is clear: I the plaintiff am living in a state of constant anxiety and fear, and are experiencing significant emotional distress and duress as a result of the state's decision to cut funding to dental services which caused the states dental crisis.

I urge this court to take into account the plaintiff's testimony and the facts of this case. The plaintiff's situation is not just a matter of past harm, but it is an ongoing and continuing crisis that requires immediate attention. I urge this court to award punitive damages as a way to punish the state for its reckless behavior and to deter it from engaging in similar behavior in the future.

**MINNPOST ARTICLE 4/14/2009 DIRECTLY LINKING A LOOMING MINNESOTA DENTAL CRISIS TO PROPOSED STATE BUDGET CUTS BY - Anthony J. DiAngelis, DMD, MPH, chief of the Department of Dentistry, Hennepin County Medical Center. (A DENTAL EXPERT)**

**"Proposed cuts to dental services: All pain, no gain**
**by Dr. Anthony J. DiAngelis,  04/14/2009**
**There is widespread agreement that the state's budget shortfall will result in necessary, difficult and likely unpopular decisions. There is much less consensus on how to make cuts in a fair and equitable manner. Overall health-care costs are consuming more and more of both federal and state budgets for reasons — too many to discuss here. Dental expenditures as a percentage of total health costs are truly minuscule, representing, at most, four cents of the health-care dollar; they are even less for state-sponsored dental programs that cover the working poor; the unemployed, whose ranks are growing in size as the economy deteriorates; and the disabled. Yet Gov. Tim Pawlenty's budget proposal to eliminate adult dental services for all but pregnant women, children and the disabled is astonishingly disproportionate, economically flawed and fraught with unacceptable short-and long-term consequences.**

**The governor's solution to dental access for adults is hospital emergency rooms (ERs).  In the Twin Cities the cost of an ER visit for a toothache or dental infection averages $450 to $500. For this, the patient is seen by a physician and may be given a prescription for an antibiotic and a painkiller with no dental treatment rendered.**

**Estimates suggest that there were 20,000 dental-related ER visits in Minnesota last year. At Hennepin County Medical Center alone in 2008, there were 7,400 such visits to HCMC's ER and Express Care, costing the state several million dollars in medical billings. This is cost-shifting at its worst, and leaves patients without definitive treatment of their dental problem.**

20

**Expect more patients, more severe dental problems at ERs**

Over 80 percent of these visits were by 20- to 50-year-olds, the very individuals being disenfranchised in the governor's budget. Since they would have no access to preventive or routine clinical care, under the governor's plan we could anticipate a dramatic increase in both the number of patients and severity of dental problems presenting to the ERs.

A growing number of patients with dental disease also have underlying chronic medical conditions such as diabetes, which increases their risks for complications. Recently, a diabetic patient spent three months in a surgical intensive-care unit due to infection caused by a tooth. The medical costs approached a million dollars. This could have been prevented by timely dental treatment.

Another provision in the governor's budget calls for the elimination of the Critical Access Dental Provider Program (CADPP), which would further devastate access to dental services. CADPP provides additional dollars to safety-net clinics and dentists serving substantial numbers of Minnesota's under and uninsured patients and doing so at already greatly discounted rates. As access is further diminished, we could witness the dismantling of a vital safety net. To rebuild this infrastructure at some later date would be prohibitively costly.

**Valuable clinical training**

Less apparent, but of major significance, the safety net is where many of tomorrow's dentists, dental specialists and allied health personnel receive valuable clinical training. If we reduce our ability to educate Minnesota's oral-health providers, we risk diminishing the quality of dental services for all Minnesotans. I do not believe that we either want or can afford such an outcome.

The entire dental community and numerous advocacy groups are working diligently to be part of the solution — seeking ways to reduce costs, improve efficiencies in delivering care and accommodating to the realities inherent in the current budget shortfall. We accept that we must shoulder our fair share of the burden; however we do not accept sacrificing the oral health and well-being of the most vulnerable of our citizens and compromising the education of future dental providers.

I, along with many of my dental and medical colleagues, urge the governor to reconsider his cuts in dental services for adults in Minnesota Health Care Programs and elimination of the Critical Access Dental Provider Program.

The "Minnesota Model" was once part of the national lexicon. It acknowledged Minnesota as a leader in many areas, chief among them the quality and innovation in the delivery of health care. We have lost our edge; are we in danger of losing our compassion as well?

**Anthony J. DiAngelis, DMD, MPH, is chief of the Department of Dentistry, Hennepin County Medical Center."** - https://www.minnpost.com/community-voices/2009/04/proposed-cuts-dental-services-all-pain-no-gain/

# MINNPOST

Nonprofit, independent jou

Topics State Government  ... ro  Public Safety  ...ate  Minn...so  Natio..a  Environment  Mer..a Healt..  e ...ict on  Sports  ...ln  P

**Community Voices**

# Proposed cuts to dental services: All pain, no gain

L  **Dr. Anthony J. DiAngelis**
3d  14/27 09

There is widespread agreement that the state's budget shortfall will result in necessary, difficult and likely unpopular decisions. There is much less consensus on how to make cuts in a fair and equitable manner. Overall health-care costs are consuming more and more of both federal and state budgets for reasons — too many to discuss here. Dental expenditures as a percentage of total health costs are truly minuscule, representing, at most, four cents of the health-care dollar; they are even less for state-sponsored dental programs that cover the working poor; the unemployed, whose ranks are growing in size as the economy deteriorates; and the disabled. Yet Gov. Tim Pawlenty's budget proposal to eliminate adult dental services for all but pregnant women, children and the disabled is astonishingly disproportionate, economically flawed and fraught with unacceptable short-and long-term consequences.

The governor's solution to dental access for adults is hospital emergency rooms (ERs). In the Twin Cities the cost of an ER visit for a toothache or dental infection averages $450 to $500. For this, the patient is seen by a physician and may be given a prescription for an antibiotic and a painkiller with no dental treatment rendered.

Estimates suggest that there were 20,000 dental-related ER visits in Minnesota last year. At Hennepin County Medical Center alone in 2008, there were 7,400 such visits to HCMC's ER and Express Care, costing the state several million dollars in medical billings. This is cost-shifting at its worst, and leaves patients without definitive treatment of their dental problem.

**Expect more patients, more severe dental problems at ERs**
Over 80 percent of these visits were by 20- to 50-year-olds, the very individuals being disenfranchised in the governor's budget. Since they would have no access to preventive or routine clinical care, under the governor's plan we could anticipate a dramatic increase in both the number of patients and severity of dental problems presenting to the ERs.

A growing number of patients with dental disease also have underlying chronic medical conditions such as diabetes, which increases their risks for complications. Recently, a diabetic patient spent three months in a surgical intensive-care unit due to infection caused by a tooth. The medical costs approached a million dollars. This could have been prevented by timely dental treatment.

Another provision in the governor's budget calls for the elimination of the Critical Access Dental Provider Program (CADPP), which would further devastate access to dental services. CADPP

23

provides additional dollars to safety-net clinics and dentists serving substantial numbers of Minnesota's under and uninsured patients and doing so at already greatly discounted rates. As access is further diminished, we could witness the dismantling of a vital safety net. To rebuild this infrastructure at some later date would be prohibitively costly.

**Valuable clinical training**

Less apparent, but of major significance, the safety net is where many of tomorrow's dentists, dental specialists and allied health personnel receive valuable clinical training. If we reduce our ability to educate Minnesota's oral-health providers, we risk diminishing the quality of dental services for all Minnesotans. I do not believe that we either want or can afford such an outcome.

The entire dental community and numerous advocacy groups are working diligently to be part of the solution    seeking ways to reduce costs, improve efficiencies in delivering care and accommodating to the realities inherent in the current budget shortfall. We accept that we must shoulder our fair share of the burden; however we do not accept sacrificing the oral health and well-being of the most vulnerable of our citizens and compromising the education of future dental providers.

I, along with many of my dental and medical colleagues, urge the governor to reconsider his cuts in dental services for adults in Minnesota Health Care Programs and elimination of the Critical Access Dental Provider Program.

The "Minnesota Model" was once part of the national lexicon. It acknowledged Minnesota as a leader in many areas, chief among them the quality and innovation in the delivery of health care. We have lost our edge; are we in danger of losing our compassion as well?

*Anthony J. DiAngelis, DMD, MPH, is chief of the Department of Dentistry, Hennepin County Medical Center.*

### SIMILIAR CASES TO SUPPORT PLAINTIFF'S CASE

**Violation of Federal Medicaid Laws: Similar to Clark v. Kizer, plaintiff states Minnesota violated § 1396a(a)(30)(A) by failing to ensure Medicaid recipients like plaintiff have adequate access to dental services, particularly in rural areas.**

**Statewideness and Comparability Violations: Like Clark, I the plaintiff contends there are statewide access issues and discriminatory impacts on Medicaid recipients compared to the general population, violating §§ 1396a(a)(1) and 1396a(a)(10).**

**Based on Spencer v. Concannon precedent provided, plaintiff declares that the State of Minnesota has similarly violated the equal access provision under § 1396a(a)(30)(A) of the federal Medicaid laws by failing to ensure Medicaid recipients have adequate access to dental**

services, particularly in rural areas.

"Under federal law, <u>Medicaid services must be furnished with "reasonable promptness"</u> under § 1396a(a)(8) and that the New Hampshire defendants were in violation of this provision" Bryson v. Shumway, 308 F.3d 79, 84 (1st Cir. 2002). 42 U.S. Code § 1396a - State plans for medical assistance.

## CLAIMS FOR RELIEF

Violation of Medicaid Statutes and Regulations: Defendants' actions constitute a violation of federal Medicaid statutes and regulations, resulting in harm to Plaintiff and other Medicaid recipients. - Deliberate Indifference

Negligence: Defendants were negligent in failing to ensure proper dental care access for Medicaid recipients, causing harm to Plaintiff. - Deliberate Indifference

Breach of Contract: Defendants breached their agreements with Medicaid dental providers, failing to provide comprehensive dental services to Medicaid recipients as required. - Deliberate Indiff.

Violation of Civil Rights: Defendants' actions constitute discrimination and a violation of civil rights under federal law. - Deliberate Indifference

Violation of Constitutional Rights: Defendants' actions violated Plaintiff's constitutional rights, including the right to equal protection under the law. - Deliberate Indifference

## SUMMARY OF CLAIMS FOR RELIEF

**Breach of Duty: Plaintiff states the Defendants have failed to ensure adequate dental access for Medicaid recipients, including plaintiff, despite statutory and regulatory obligations. This breach of duty is supported by claims of negligence, breach of contract (with Medicaid dental providers), and violations of federal Medicaid statutes and regulations.**

**Causation: Plaintiff's complaint asserts that Defendants' failure to provide adequate dental care has directly caused harm to plaintiff, including extreme pain, infection, swelling, partial tooth loss, and embarrassment. These conditions have significantly impacted the plaintiff's daily life and exacerbated existing disabilities such as PTSD and anxiety.**

**Damages: Plaintiff seeks compensatory damages for the harm suffered, including emotional distress and physical pain caused by the lack of timely and appropriate dental care. The complaint also suggests the possibility of punitive damages to deter similar conduct in the future.**

**Legal Basis: Plaintiff's complaint cites violations of federal Medicaid statutes (§ 1396a(a)(30)**

(A) and others), negligence, breach of contract, civil rights violations, and misrepresentation. These legal claims argue that the Defendants are legally responsible for the harm caused to the plaintiff due to their actions or inactions.

Jurisdiction and Venue: Plaintiff's complaint establishes that the federal court has jurisdiction over the matter (federal question jurisdiction and civil rights jurisdiction) and that venue is proper in the district where substantial events giving rise to the claims occurred.

**TOLLING LANGUAGE**

a. Pursuant to Minn. Stat. § 3.736, Subd. 2, the statute of limitations for this action is tolled until the Plaintiff's injuries have reached maximum medical improvement. As the Plaintiff's injuries have not yet reached maximum medical improvement, the statute of limitations has not yet started to run.

b. This action is brought within the time period allowed by law under the statutes of limitations. Plaintiff also filed a notice of intent to sue via email on 6/6/2024 and updated this notice again by email on 6/11/2024.

 Sonya Braxton <sonyabraxton7@gmail.com>

to:      Office of the Minnesota Attorney General <AG.Replies@ag.state.mn.us>

date:    Jun 6, 2024, 7:15 PM

subject: 6/6/2024 NOTICE OF INTENT TO FILE LAWSUIT AGAINST THE STATE OF MINNESOTA ET AL IN FEDERAL COURT - UPDATED PDF (DRAFT) OF MY COMPLAINT TO BE FILED IS ATTACHED

mailed-by:      gmail.com

:        Important because you marked it as important.


**CASE SUMMARY**

This is a civil action brought by the Plaintiff against the Defendant's for damages arising from the negligence of the Defendant's (ongoing since mid 2022). Plaintiff has suffered ongoing injuries and has been under the care of medical professionals for treatment and management of those injuries, though the treatment option available, as in ER visits, have not assisted with fixing the underlying dental complications suffered by plaintiff due to the ER only being able to provide antibiotics, this is not dental care but a band-aid remedy, plaintiff needs comprehensive dental care. Plaintiff has not had access to necessary dental care as a result of the Defendant's negligence. The statute of limitations for this action is tolled until  Plaintiff's injuries have reached maximum medical improvement, and this action is brought within the time period

allowed by law.

WHEREFORE, Plaintiff demands judgment against the Defendant's in an amount to be determined at trial.

**180 DAY NOTICE TO THE STATE**

I believe that my severe exacerbation of PTSD and anxiety prevented me from understanding or fulfilling the potential rules that may or may not apply to my claims with the 180-day notice requirement. I am currently undergoing counseling and treatment to manage my condition and its impact on meeting legal deadlines. I felt overwhelmed by dread at the prospect of filing this lawsuit, but I saw no other recourse to address the dire circumstances of lack of dental access. For 2 years i suffered without dental care or a reasonable way to obtain it as a medicaid recipent who is disabled, Indigenous and female, and unfotrtuately marginalized. I ask the court to please take into account and show mercy for my potential error(s).

**REQUEST FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

a. Declare Defendants' actions as violations of Medicaid statutes and regulations.

b. I seek an **Emergency Injunction** compelling Defendants to implement measures ensuring adequate dental access for Medicaid recipients, particularly in rural areas. My request is substantiated by the following facts:

    I. In 2009, Anthony J. DiAngelis, DMD, MPH, chief of the Department of Dentistry at Hennepin County Medical Center, explicitly warned the state that proposed budget cuts would lead to a 'dramatic increase' in dental problems and lack of access for Medicaid adults, posing significant harm. Despite this warning, the state proceeded with the cuts.

    II. The state has acknowledged a persistent dental access crisis for over a decade among the vulnerable Medicaid population, indicating deliberate indifference. "Low-income Minnesotans enrolled in Medical Assistance and MinnesotaCare experience higher rates of dental disease and greater difficulty accessing dental services than Minnesotans with private dental insurance". (source: Minnesota Department of Human Services).

    III. I have suffered from dental issues such as infection, pain, tooth loss, which have exacerbated my PTSD and anxiety since 2022. This suffering is directly attributable to being a Medicaid recipient unable to access dental care because of the state's dental crisis. These injuries have significantly impaired my quality of life and ability to function daily.

    IV. Under the 'state created danger' doctrine, the state's decision to cut Medicaid dental

27

funding in 2009, despite explicit warnings, constitutes conscience-shocking conduct that directly caused both my injuries and the broader dental crisis in Minnesota over the subsequent decade. The state's continued indifference, despite notice, strengthens my claims.

V.  Based on this evidence, I assert a compelling argument for an emergency injunction to require the state to establish a public dental clinic in my county, ensuring access to necessary dental care. The state's actions and prolonged neglect, despite warnings, likely violate my constitutional rights, warranting immediate injunctive relief to address ongoing harm. Therefore, I am requesting the court to grant an Emergency Injunction mandating the establishment of a comprehensive permanent dental clinic in Koochiching County, Minnesota, within 12 months. Additionally, I request the court to order Defendants to provide funding for the establishment and operation of the public dental clinic in Koochiching County, MN, possibly within its county seat. In the interim, I also request the establishment of a comprehensive mobile dental clinic to service the area immediately until the permanent dental clinic is operational.

VI.  I believe I have fulfilled the requirements for federal procedure as a plaintiff seeking a preliminary injunction, demonstrating: [1] likelihood of success on the merits, [2] likelihood of suffering irreparable harm without preliminary relief, [3] balance of equities tipping in my favor, and [4] that an injunction is in the public interest.

c. Award Plaintiff compensatory damages for the harm suffered, including punitive damages to deter similar conduct in the future.

d. I ask that court assign legal counsel to represent Plaintiff in these complex proceedings.

f. Allow Plaintiff to attend court proceedings and depositions via Zoom due to transportation limitations and its undue hardship.

g. Deny any motion by Defendants to change venue to state court, as this claim involves a federal question within the jurisdiction of the federal court.

h. Deny any motion for a bench trial by the defendant, as this case involves public interest. Persons similarly situated are being harmed, just as the plaintiff is also being harmed.

i. Allow plaintiff initials only to be recorded in public record to protect plaintiffs identity

**PLAINTIFF LETTER IN SUPPORT OF KEEPING PLAINTIFF'S IDENTITY OUT OF PUBLIC RECORD**

**Your Honor,**

**I respectfully request permission to use only my initials in the public records of this lawsuit. Additionally, I seek a jury trial in this matter. The complexities and public interest surrounding**

the systemic issues of Medicaid dental access necessitate the thorough examination and impartiality that a jury trial can offer. Such a trial will ensure a comprehensive evaluation of the impact of these issues on Medicaid recipients, including myself.

My request to use only initials in public records is motivated by concerns regarding stigma, protection of my self-esteem, and safeguarding my mental health. As someone suffering from PTSD and anxiety, exacerbated by the injury I sustained due to inadequate dental access and resulting tooth loss, the sensitivity of my medical condition is profound. Disclosure of my full identity in connection with this injury could subject me to unwarranted scrutiny, embarrassment, and potentially damaging stigma. Given my existing mental health challenges, the prospect of my personal medical details, especially regarding my dental health, becoming public knowledge is distressing and could further exacerbate my conditions.

Preserving my anonymity in this lawsuit is critical to preventing further harm to my mental health. Additionally, I am concerned about the potential impact on my self-esteem and how public disclosure may unfairly influence others' perceptions of me, affecting various aspects of my life and opportunities.

I respectfully submit that permitting the use of initials and redacting identifying information, including my mailing address, legal residential address, and my email are essential to uphold my privacy, protect my mental well-being, and mitigate the potential for stigma and its adverse effects. I assure the court that this request does not aim to hinder transparency but rather seeks to balance the necessity of privacy with the legal requirements of this proceeding.

I also request that, since there is no court order as yet requiring all court documents to protect my true identity, the defendants respond in all pleadings or to the press with my initials instead of my full name. This measure would prevent the defendants from publicly shaming me by using my full name or any other identifying information, thereby protecting my mental health from further harm.

Thank you for considering my requests. I am prepared to provide any additional information or documentation necessary to support my plea for privacy in this matter.

Sincerely,

Sonya Braxton requested initial use for anonymity is S.B.

## DEMAND FOR JURY TRIAL, NOTICE OF LAWSUIT WITH REQUEST TO WAIVE SERVICE OF SUMMON

Plaintiff demands a trial by jury on all issues triable as outlined in this 30-page complaint. Defendants will receive a copy of this complaint along with a request to Waive Service of

Summons.

**PAPERWORK FORMS (2) ATTACHED WITH (30 PAGE) COMPLAINT:**
1. Application To Proceed In District Court Without Prepaying Fees Or Cost
2. Application For Pro Se Litigant To File Electronically

**Respectfully submitted,**

Sonya Braxton (X) Signature_____    _Sonya Braxton_ Date _6/24/2024_
sonyabraxton7@gmail.com
P.O. Box 204
Littlefork, MN 56653